BERNARD JENNINGS SWEETING, JR. *v.*
STATE OF MARYLAND

[No. 132, September Term, 1968.]

*Decided January 15, 1969.*

The cause was argued before MURPHY, C.J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

*Millard S. Rubenstein,* with whom was *Roland Walker* on
the brief, for appellant.

*William E. Brannan, Assistant Attorney General,* with whom
were *Francis B. Burch, Attorney General, Samuel A. Green,*

*Jr., State's Attorney for Baltimore County,* and *Gary Huddles, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was convicted of burglary by the court sitting without a jury and sentenced to ten years under the jurisdiction of the Department of Correction. He contends on this appeal (1) that the trial court erred in denying his motion to suppress evidence, and (2) that the evidence was insufficient to support his conviction.

I

Appellant's pretrial motion to suppress was based on the alleged illegal search of his automobile and the police seizure therefrom of a wallet belonging to the victim of the burglary. The evidence adduced at the trial bearing on the legality of the search and seizure was substantially as follows:

Harriet Thompson, the victim of the crime, testified that at 10:30 p.m. on August 28, 1967, she left her locked house at 516 Fifth Avenue to visit a neighbor, leaving her pocketbook containing her wallet on the kitchen table; and that when she returned at approximately 11:00 p.m. she found that her door had been broken and that her wallet containing $25.00 was missing from her pocketbook. She testified that at approximately 11:30 p.m. or 12:00 midnight the police returned her wallet to her.

Officer Vernon Redding testified that he went to the Thompson home at 11:29 p.m. in response to a call and obtained a description of the stolen wallet from Mrs. Thompson; that he then searched the area and sometime between 11:45 p.m. and 12:00 midnight observed an unoccupied automobile parked in a court at the end of the road in the 700 block of Fifth Avenue, this being about one block from where the burglary occurred; that a car "usually doesn't sit in that location"; that the car was locked; that he immediately obtained a listing on the vehicle from the Department of Motor Vehicles, and learned that it was registered in appellant's name; that he shone his flashlight into the vehicle's front window on the driver's side

and observed a wallet "sticking out from under the left side of the front seat right by the floorboard"; and that the wallet fit the description of that stolen from Mrs. Thompson. The officer testified that he had "a feeling that it was the car used in the burglary, and I didn't know whether it was an accomplice or what, so I sat on it"; that he had waited and observed the car from an adjacent court for about fifteen minutes when a man, later identified as Bernard Lease, came up to the car, unlocked its door and entered the vehicle; that he (Redding) then went over to the car and, in response to his questions, Lease identified himself and explained that he was taking the car at appellant's request; that he (Redding) told Lease not to move the car, "reached inside the car" and pulled out the wallet which he had earlier observed; and that when he told Lease that he was going to search the vehicle, Lease said "Okay." Lease gave the officer the keys and went home.

Officer Redding further testified that appellant had been apprehended by another officer on a Peeping Tom charge at approximately 11:15 p.m. on the night of the burglary and was taken to police headquarters; and that the Peeping Tom offense occurred about one block from where appellant's car was found parked. It is not clear from the evidence whether Redding had knowledge of appellant's arrest at the time he observed his car and seized the wallet therefrom, or whether he learned afterwards of the arrest.

Bernard Lease testified that he obtained the keys to appellant's car from the appellant at the police station and was going to move his car for him; that the car was unlocked when he got to it and the window was down; that as he got into the car, Officer Redding approached him, and he told the officer that he was taking the car back to the appellant; that the officer asked him "Do you have any objections if I search the car," to which he responded "none whatsoever"; and that while the officer never got in the car, he shone his flashlight into it and pulled out a wallet from under the front seat. The witness did not observe whether the wallet had actually been sticking out from under the front seat.

In denying the motion to suppress the wallet from evidence, the lower court ruled in effect that the officer's action in shin-

ing his flashlight into appellant's car did not constitute a search within the ambit of the Fourth Amendment.

Appellant contends that as the search of his car was not incident to his arrest, and as the officer had no cause to believe that his vehicle was in any way connected with the Thompson burglary when he first looked into it, he was necessarily a trespasser and his action in shining the flashlight into the interior of the car constituted a warrantless search prohibited by the Fourth Amendment. Appellant maintains that the officer did not make a mere casual observation of that which could readily be seen but, on the contrary, "he came up close to the vehicle, crouched over, peered within, and, when that revealed nothing remarkable to him, proceeded to conduct a comprehensive, studied exploration, with the assistance of his flashlight, throughout the entire interior of the vehicle as a result of which he ultimately discovered part of a red wallet protruding from under a seat thereof."

Even with the gloss placed on the evidence by the appellant with respect to the manner by which Officer Redding made his observation of the stolen wallet, we agree with the lower court that the officer's action in shining his flashlight into the vehicle, and his ensuing observation of the wallet protruding from under the seat did not, under the circumstances of this case, constitute an unreasonable search proscribed by the Fourth Amendment. Redding had knowledge that a felony had been committed and that a particular wallet had been stolen in that crime. In conducting his investigation in the immediate area of the crime, he observed a motor vehicle parked on a public street under circumstances giving rise to some suspicion in his mind that because of its position, the vehicle was in some way connected with the crime. While his suspicion did not at that time constitute probable cause to make a warrantless search of the vehicle, see *Carroll v. United States,* 267 U. S. 132, we think the officer was wholly justified in making further investigation by shining his flashlight into and viewing the vehicle's interior. It is, of course, unquestioned that an automobile comes within the protection of the Fourth Amendment and cannot be subjected to an unreasonable search, but it is equally clear that it is not a search in the constitutional sense to see what is in plain

view, either in daylight or artificial light. See *Nestor v. State,* 243 Md. 438; *Kershaw v. State,* 199 Md. 135; *Reagan v. State,* 4 Md. App. 590; *Minnick v. State,* 4 Md. App. 81. It has been held under circumstances not dissimilar to those involved in the present case that where an officer is in a place where he is lawfully entitled to be (as here, on a public street), the shining of a flashlight at night inside the vehicle while remaining outside does not amount to an illegal search under the Fourth Amendment. See *United States v. Lee,* 274 U. S. 559; *Fagundes v. United States,* 340 F. 2d 673 (1st Cir.); *Davis v. United States,* 327 F. 2d 301 (9th Cir.); *Petteway v. United States,* 261 F. 2d 53 (App. D.C.); *United States v. O'Brien,* 174 F. 2d 341 (7th Cir.); *Smith v. United States,* 2 F. 2d 715 (4th Cir.); *United States v. Callahan,* 256 F. Supp. 739 (D. Minn.); *State v. Haggard,* 404 P. 2d 580 (Idaho); *People v. Carnes,* 343 P. 2d 626 (Calif. Dist. Ct. App.).

In *Ferguson v. State,* 236 Md. 148, it was held that it was not a search to see evidence of crime through a car window in the daytime and that the officer, in looking through the window, was not a trespasser, the vehicle being parked on a public lot. We think it too clear to require discussion that Officer Redding was not a trespasser when he looked into appellant's vehicle while standing on a public street. See also *Griffin v. State,* 200 Md. 569 (observation made by a police officer that a crime was being committed within a house by peeking through a side window); *Minnick v. State, supra* (observation made through an open garage door of stolen articles within the garage); *Johnson and Magbee v. State,* 2 Md. App. 300 (observation of criminal activities by looking through an open window with aid of binoculars); *Mullaney v. State,* 5 Md. App. 248 (observation of criminal activities within a motel room through an open door). *Cf. Dailey v. State,* 234 Md. 325; *Beale v. State,* 230 Md. 182; *Dorsey and Gladden v. State,* 2 Md. App. 40. In *Harris v. United States,* 390 U. S. 234, 19 L.Ed.2d 1067— a case where a police officer had lawfully opened the door of an impounded vehicle and noticed an incriminating document which he seized—the Supreme Court held that "objects falling in the plain view of an officer who has the right to be in the position to have that view are subject to seizure and may be introduced

in evidence," citing *Ker v. California,* 374 U. S. 23, pp. 42-43; *United States v. Lee, supra, and Hester v. United States,* 265 U. S. 57.

As Officer Redding's observations of the stolen wallet involved neither a search within the ambit of the Fourth Amendment nor a trespass, it was proper for him to forthwith seize the fruits of the known crime. In so holding, we recognize the force of the recent Supreme Court decisions which seemingly broaden the scope of the Fourth Amendment guarantee against unreasonable searches and seizures to protect an individual against unreasonable governmental intrusion in any area where he may harbor a reasonable expectation of privacy. See *Terry v. Ohio,* 389 U. S. 804, 20 L.Ed.2d 889; *Mancusi v. DeForte,* 390 U. S. 903, 20 L.Ed.2d 1154; *Katz v. United States,* 389 U. S. 347, 19 L.Ed.2d 576. We do not think, however, that shining a flashlight into an unoccupied vehicle parked on a public street in the nighttime constitutes such an unreasonable arbitrary intrusion upon a constitutionally protected area as would, under the circumstances of this case, require exclusion from evidence of the seized stolen wallet.

In addition to these reasons justifying the seizure of the wallet from appellant's vehicle, the rule is well established that the search of a motor vehicle, unlike a home, may be made without a warrant or previous arrest when the officer has probable cause in the constitutional context to believe that the vehicle contains that which is subject to seizure, including the fruits or instrumentalities of a crime. See *Dyke v. Taylor Implement Mfg. Co. Inc.,* 389 U. S. 815, 20 L.Ed.2d 538; *Brinegar v. United States,* 338 U. S. 160; *Scher v. United States,* 305 U. S. 251; *Husty v. United States,* 282 U. S. 694; *United States v. Lee, supra; Carroll v. United States, supra.* The rule which has been afforded recognition by the Court of Appeals in *Peal v. State,* 232 Md. 329, and by this court in *Sedacca v. State,* 2 Md. App. 617, is primarily justified on the basis that an automobile is so readily movable as to make impracticable the obtaining of a search warrant. It has been applied to parked vehicles even where no immediate danger exists that the stolen articles will be removed. See *United States v. Haley,* 321 F. 2d 956 (6th Cir.); *Armada v. United States,* 319 F. 2d 793 (5th Cir.); *United States v. Walker,* 307 F. 2d 250 (4th Cir.).

We think it plain that once Officer Redding had lawfully observed the stolen wallet in the car, he had probable cause to search it, particularly so when Lease came on the scene and undertook to drive it away.

In view of our conclusion, we find it unnecessary to consider whether the consent of Lease to the search of appellant's car would be binding upon the appellant. The question is by no means free of difficulty. See *United States v. Eldridge,* 302 F. 2d 463 (4th Cir.) ; *Hamilton v. North Carolina,* 260 F. Supp. 632 (E.D.N.C.). *Cf. State v. Bernius,* 203 N.E. 2d 241 (Ohio) ; *Corngold v. United States,* 367 F. 2d 1 (9th Cir.).

## II

Appellant contends that the evidence was insufficient to support his conviction since it showed only that a wallet taken during the course of a burglary was found in an automobile owned by the appellant. We find no merit in the contention. The evidence showed that the burglary occurred between 10:30 p.m. and 11:00 p.m.; that appellant was arrested about one block from the scene of the burglary at 11:15 p.m.; that the stolen wallet was found in his car shortly thereafter; that he had the keys to his car when arrested and knew where it was parked since he gave the keys to Lease shortly after his arrest and quite obviously directed him to it. The trial judge found as a fact that the car was locked. Under these circumstances we think that the trial judge was not clearly erroneous when he concluded that appellant had possession of the stolen wallet, and that such possession was sufficient to give rise not only to an inference of fact that appellant was the thief, *Ponder v. State,* 227 Md. 570, but also that as the possessor, he was the burglar, as well as the thief. See *Boggs v. State,* 228 Md. 168; *Jones v. State,* 5 Md. App. 180.

*Judgment affirmed.*